FORD, J.,
This is the Commonwealth’s appeal from the trial court’s pre-trial dismissal of one felony and three misdemeanor charges filed against appellee/defendant, Oliver Franklin Savage, for a traffic accident that he caused resulting in the death of James Knappenberger.
The dismissal order was entered on October 29, 2014. The Commonwealth timely filed its appeal to the Superior Court of Pennsylvania on November 19, 2014. In the Commonwealth’s “concise statement of matters *163 complained of on appeal,” which the Commonwealth also timely filed, it contends that the court abused its discretion by dismissing the four charges even though it presented a prima facie case on each charge. Because the Commonwealth presented insufficient evidence on the charges, I properly dismissed them. The appeal is meritless as I explain in this opinion which is filed under Pa.R.A.P. 1925(a).
The charges filed against the appellee in the criminal information were: Count 1, homicide by vehicle, 75 Pa.C.S. §3732(a), Count 2, involuntary manslaughter, 18 Pa.C.S. §2504(a), Count 3, recklessly endangering another person, 18 Pa.C.S. §2705, Count 4, recklessly endangering another person, 18 Pa.C.S. §2705, Count 5, careless driving, 75 Pa.C.S. §3714(b), Count 6, driving at safe speed, 75 Pa.C.S. §3361, Count 7, following too closely, 75 Pa.C.S. §3310(a), and Count 8, reckless driving, 75 Pa.C.S. §3736(a). All charges stemmed from a vehicular accident on February 10, 2014, in which Mr. Rnappenberger was killed. Counts 1, 2, 3 and 4 are the primary subjects of this appeal but as I will show, some of the remaining counts, which are summary offenses, were considered in reaching the decision to dismiss the first four counts.
On July 28, 2014, appellee’s counsel filed an omnibus pre-trial motion which contained Section I entitled “motion for a writ of habeas corpus and/or motion to dismiss all the felony and misdemeanor counts in the criminal information.” The contention in this motion was that the Commonwealth could not present a prima facie *164 case as to Counts 1 through 4. I conducted a hearing on this motion on September 4, 2014.
In an effort to establish a prima facie case, the Commonwealth presented the transcript of the testimony from the preliminary hearing (C-5), accident photos (C-l through C-4), a map of the accident location (C-6), and a diagram of the accident scene (C-l). The Commonwealth also presented the testimony of Sergeant Cory Reader of the Upper Macungie Township Police Department and the testimony of Sergeant William Easparr of the same department. Sergeant Reader investigated the accident. Based upon extensive training and experience, he rendered expert testimony about the dynamics and cause of the accident. Sergeant Easparr testified about a statement that the appellee made to him at the scene following the accident.
After consideration of that evidence and applicable law, I concluded that the Commonwealth had not established a prima facie case on Counts 1 through 4 and I dismissed those counts through the October 29 order.
What follows is a summary of the evidence, presented exclusively by the Commonwealth, on the habeas corpus motion and the motion to dismiss. The evidence was uncontroverted.
Statement of Facts
Shortly after 9:00 a.m. on February 10,2014, appellee, Mr. Savage, was operating a white Freightliner truck tractor with an enclosed trailer traveling northbound *165 (which was actually in an easterly direction) on Route 222 approaching its intersection with Newtown Road and Breinigsville Road in Upper Macungie Township, Lehigh County. The day was clear with no precipitation. The roadway was dry except for some wet spots. There was plowed snow off the roadway beyond the fog line. For a motorist traveling northbound for a considerable distance on Route 222 before entering this intersection, as appellee was, he would pass through the village of Maxatawny where the posted speed limit was 35 miles per hour. After traveling through that village, there is a posted speed limit of 55 miles per hour which posting was the final one before the motorist would arrive at this intersection. For the same motor vehicle operator traveling northbound, he would first see this intersection from approximately three-tenths of a mile before arriving at it. In the truck tractor that appellee operated, he sat higher than a person operating a passenger vehicle. •
As appellee drove his tractor trailer toward the intersection, vehicles in front of him were stopped or slowing because of the operational traffic signal at the intersection. The last vehicle in line of the slowing or stopped vehicles was a white Dodge Caravan operated by Mr. Knappenberger. As the truck and the Caravan approached the intersection, there were no vehicles between the truck and the Caravan.
Appellee had his truck in ninth gear in a ten-gear transmission. This is one gear short of over-drive. As Sergeant Reader explained, “In your passenger car, essentially it would be having it in the D with a circle *166 around it like you were traveling on the highway.... It would be a gear selected generally if you were not intending to slow down or change speed.” C-5, p. 17.
Appellee failed to recognize in time that the vehicles in front of him, including Mr. Knappenberger’s, were either stopped or slowing. As a result, he failed to maintain control of his own vehicle. The data from the truck’s engine module control (EMC), which was retrieved later, indicated that appellee applied the brakes on the truck in what was described as abnormal or hard or panic braking. Immediately prior to reaching Mr. Knappenberger’s Caravan, appellee turned his truck to the right. Despite these attempts at evasion, the front of his vehicle on the driver side struck the rear passenger comer on the Caravan. The force and angle of that collision forced the Caravan across the middle lane and into the oncoming or southbound (westerly direction) lane of Route 222. Just at that moment, a different tractor trailer was traveling in the oncoming lane. It was stmck by the Caravan under the driver’s side door in the area of the fuel tank.
These were Sergeant Reader’s expert conclusions:
Based on everything we observed at the scene, the damage to the vehicles, the data that was gathered from the ECM module, I believe Mr. Savage was traveling down the roadway; gear selection indicates he was traveling with open space in front of him prior to getting to that intersection; and did not recognize that the open space was closing rapidly because there were vehicles stopped in front of him. As I testified, there *167 were several other cars that pulled off. Those vehicles were forward of that Dodge van that day. They were indicative of the traffic signal that was either red or just changed to green or some sort of interaction where all those cars were stopped forward of Mr. Savage’s vehicle. He failed to recognize either enough to bring his vehicle to a stop or at least slow it to a point to keep control of it until those cars started to proceed away from him or forward of him. Those steps, pre-crash, contributed and caused the crash that is depicted in those pictures. Again, the panicked braking and offset or steering to the right, as we talked about, struck the van and pushed it into the oncoming lane.
C-5, pp. 28-29.
Following the accident, the police determined that a brake on appellee’s truck was out of adjustment. There was no proof nor was there an argument that this contributed to the accident. The investigation did not reveal any other mechanical problems with the tractor trailer. The precise speed at which the appellee was operating his truck immediately before his hard braking or at the point of impact was unknown. Sergeant Reader believed that it would be “unfair and not accurate” to render an opinion on the speed of appellee’s truck at impact based on the data available to him. (He offered a range of speed between 30 and 52 miles per hour with his estimation that appellee traveled 40 miles per hour at impact.) C-5, pp. 38-40.
There was no evidence that appellee was using a cell phone or any other extraneous device at the points of *168 braking or impact. Appellee was tested for the presence of alcohol which yielded negative results.
At the direction of the police, appellee remained seated in the truck cab following the accident. Sergeant Easparr spoke with appellee while he was seated in the driver’s seat. Appellee told the sergeant that the accident was his fault. When the sergeant asked him to explain what happened, appellee stated he was traveling northbound on Route 222. He noticed that there was a line of traffic stopped in front of him, but it was too late. He tried to apply the hard brake on a wet roadway, but the vehicle was not stopping. He swerved to the right but his truck collided with the passenger side rear of the Caravan which was the last vehicle in the line of the stopped vehicles. That propelled the Caravan into the southbound lane of travel where the minivan struck the other tractor trailer and pushed it back in the other direction while the southbound tractor trailer went down an embankment.
Discussion and Conclusions of Law
Appellee challenged the sufficiency of the Commonwealth’s evidence on the felony and misdemeanor charges. Appellee did this through its motion for writ of habeas corpus contained within the omnibus pre-trial motion. This was the appropriate procedural means for the pre-trial challenge to the sufficiency of the evidence. Commonwealth v. Huggins, 575 Pa. 395, 399 n.2, 836 A.2d 862, 864 n.2 (2003).
At the pre-trial stage, the Commonwealth does not have to prove a defendant’s guilt beyond a reasonable *169 doubt. Rather, the Commonwealth’s burden is to present a prima facie case of the defendant’s guilt. Id. at 402, 836 A.2d at 866 (citation omitted). “Aprima facie case exists when the Commonwealth produces evidence of each of the material elements of the crime charged and establishes sufficient probable cause to warrant the belief that the accused committed the offense.” Id. (citation omitted). In determining if a prima facie case has been established, the Commonwealth is entitled to reasonable inferences and the evidence must be read in the light most favorable to the Commonwealth’s case. Id. (citation omitted).
In the present case, for purposes of whether the Commonwealth presented sufficient evidence, there was no dispute that Mr. Knappenberger died as a result of appellee’s conduct in driving the tractor trailer. The primary issue was whether the mens rea elements of homicide by vehicle, involuntary manslaughter and recklessly endangering another person were established by the evidence.
The statutory definition of Count 1, homicide by vehicle, in pertinent part, is: “Any person who recklessly or who with gross negligence causes the death of another person while engaged in the violation of any law of this Commonwealth...applying to the operation or use of a vehicle or to the regulation of traffic...is guilty of homicide by vehicle, a felony of third degree, when the violation is the cause of death.” 75 Pa.C.S. § 3732(a). Thus, the mens rea requirement in this statute that the Commonwealth must prove is that the appellee drove his vehicle “recklessly or with gross negligence.”
*170 The statutory definition of Count 2, involuntary manslaughter, is: “A person is guilty of involuntary manslaughter when as a direct result of the doing of an unlawful act in a reckless or grossly negligent manner, or the doing of a lawful act in a reckless or grossly negligent manner, he causes the death of another person.” 18 Pa.C.S. § 2504(a).
The appellate courts have construed the terms “reckless” and “grossly negligent” as defining the equivalent state of mind for purposes of these statutes. See Commonwealth v. Colmer, 552 Pa. 527, 534, 716 A.2d 593, 597 (1998); and Commonwealth v. Grimes, 842 A.2d 432, 434 (Pa. Super. 2004).
The definition of each offense charged in Counts 3 and 4, recklessly endangering another person, is found at 18 Pa.C.S. §2705 which reads: “A person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury.” 18 Pa.C.S. §2705. The mens rea of recklessness is evident from this definition.
In that recklessness is the mens rea which the Commonwealth had to demonstrate to proceed to trial on Counts 1 through 4, I examined what constitutes recklessness. It is defined in the general culpability section of the Pennsylvania Crimes Code in these words:
A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material *171 element exists or will result from his conduct. The risk must be of such a nature and degree that, considering the nature and intent of the actor’s conduct and the circumstances known to him, its disregard involves a gross deviation from the standard of conduct that a reasonable person would observe in the actor’s situation.
18 Pa.C.S. § 302(b)(3). In order to consciously disregard a substantial and unjustifiable risk, one must be aware of the risk and choose to proceed in spite of it. Commonwealth v. Huggins, 575 Pa. at 400, 836 A.2d at 865.
Section IV of appellee’s omnibus pre-trial motion contained appellee’s request that the trial court not permit the introduction of appellee’s statement to the police made following the accident on the habeas corpus motion or at trial because of the Commonwealth’s alleged inability to comply with the corpus delicti rule.
“The corpus delicti rule placed the burden on the prosecution to establish that a crime has actually occurred before a confession or admission of the accused connecting him to the crime can be admitted.” Commonwealth v. Hernandez, 39 A.3d 406, 410 (Pa. Super. 2012) (quoting Commonwealth v. Young, 904 A.2d 947, 956 (Pa. Super. 2006)). The Commonwealth had to demonstrate the corpus delicti by a preponderance of the evidence. Commonwealth v. Hernandez, 39 A.3d at 411. In meeting this burden, the Commonwealth was permitted to rely on circumstantial evidence. Commonwealth v. Rivera, 828 A.2d 1094, 1103-1104 (Pa. Super. 2003) (citation *172 omitted). Further, the Commonwealth did not have to prove that the alleged criminal act could not have been caused by accident. Commonwealth v. Byrd, 490 Pa. 544, 556, 417 A.2d 173, 179 (1980).
The court accepted the Commonwealth’s “closely related crime” argument to the extent that it presented a prima facie case for the summary offenses charged in Counts 5, 6 and 7 which were careless driving, driving at safe speed and following too closely. These offenses were sufficiently related to the felony and misdemeanor counts to permit introduction of appellee’s statement on Counts 1 through 4. (The Commonwealth did not show recklessness required for Count 8, reckless driving.) Also, I believe that the corpus delicti rule is applicable to the admission of evidence at a trial only. Therefore, I denied appellee’s motion to preclude consideration of his statement. I considered the statement in making the determination of whether there was a showing that appellee acted with recklessness on the felony and misdemeanor counts.
The question to be answered on the mens rea issue for Counts 1 through 4 was whether the Commonwealth produced prima facie evidence that appellee, in operating the tractor trailer in the circumstances that preceded the fatal collision, disregarded a substantial and unjustifiable risk that the direct result of his behavior would be the death of someone using or near the roadway. See Commonwealth v. Huggins, 575 Pa. at 407, 836 A.2d at 869 (posing this question in a factually similar case).
I considered the many explanations of recklessness *173 found in the appellate decisions counsel cited. See, for example, Commonwealth v. Lamonda, 52 A.3d 365 (Pa. Super. 2012), Commonwealth v. Cienkowski, 290 Pa. Super. 415, 434 A.2d 821 (1981), Commonwealth v. Grimes, 842 A.2d at 432, Commonwealth v. Pedota, 64 A.3d 634 (Pa. Super. 2013), Commonwealth v. Setsodi, 303 Pa. Super. 482, 450 A.2d 29 (1982), Commonwealth v. Matroni, 923 A.2d 444 (Pa. Super. 2007), and Commonwealth v. Trainor, 252 Pa. Super. 332, 381 A.2d 944 (1977). I examined the circumstances in which these courts did and did not find recklessness. The cases were instructive. After consideration of these cases, the applicable statutes and the facts presented at the pre-trial hearing, I concluded that the Commonwealth did not make a prima facie showing that the appellee acted with recklessness.
Appellee did not notice the stopped or slowing vehicle of Mr. Knappenberger in front of him and could not stop his tractor trailer before it crashed into the Knappenberger vehicle. There was no evidence that appellee was struggling to stay awake, that he was intoxicated, that he was using a cell phone or engaging in any other activity that would have distracted his view of the roadway. There was no showing that appellee was speeding or driving erratically. There was no evidence even inferring that appellee consciously disregarded a known risk when he collided with Mr. Knappenberger’s vehicle. Appellee’s statement to police that the accident was his fault did not change the analysis. It only confirmed the known physical facts the police presented to the court.
The evidence only proved that appellee was inattentive *174 in the moments before the collision. This was proof of ordinary negligence, not the required recklessness. As tragic as the accident was, under our law, “not every violation of the law or unlawful act committed while operating a motor vehicle will render the driver criminally liable for a death resulting from an accident in which the vehicle was involved.” Commonwealth v. Nicotra, 425 Pa. Super. 600, 608, 625 A.2d 1259, 1263 (1993) (quoting Commonwealth v. Sisca, 245 Pa. Super. 125, 129-30, 369 A.2d 325, 327 (1976)) (though Nicotra was decided prior to the amendment of the homicide by vehicle statute in 2000, the cited legal principle was equally applicable under the current law).
Because the Commonwealth did not make a prima facie showing that appellee acted with recklessness, the charges of homicide by vehicle, involuntary manslaughter and recklessly endangering another person were properly dismissed. The appeal should be denied.